and United States v. Jody Davis. Mr. Hall, when you're ready. Thank you. I'm John Wesley Hall here for Jody Douglas Davis, the second person on the calendar, not the first person. I'm going to start with issue two. I'm not going to abandon issue one, but issue two, the sentencing issue. The district court at page 49 of the sentencing transcript said that religion was a part of the con. To prey upon the faith of the other investors. Well, not all the investors were preyed upon by mention of religion. Some were, but not all were. The con was not the technology because Mr. Davis, Mr. Ridings sincerely believed in the technology. By the trial, however, they probably had serious doubts about it, but they still believed that it could be done. It just had not been perfected. Davis believed Ridings, and Ridings, a remarkable man, I got to know him through the trial, he really believed in this technology. He'd spent 20 years developing it. The problem was it would only work on a small scale. It would not work on a large scale, and they were trying to promote large scale production. The con was not the religion. The con was how the money was spent. A little bit of it went to support the underlying project, but most of it ended up going to support Mr. Ridings, Mr. Davis. That was serious misuse of the money, and that was what the con was. But it had nothing to do with religion. The guideline range for Mr. Davis, because of his prior, was 121 to 151 months. He got 180 months. I mentioned in the brief that's 29 months above the high end, but it's 59 months above the low end. It's almost a 50% increase over the low end. We did not object at the trial, but in the Wiley case, 2007, this court cited four other circuits saying you don't have to object when the court doesn't tell you it's going to go over the guidelines, and then does. This court, in that opinion, mentions the 7th, the 10th, the D.C. Circuit, and the 6th Circuit are all in accord. So it's not a rule the 8th Circuit is out alone on. I submit to you because Judge Brooks was offended by all this, and he said so, because Mr. Davis' sentencing transcript went on for 50 pages. Mr. Davis was seriously disadvantaged by that view of religion. Mr. Davis is a devout Christian. Maybe he got in prison when he was there before. Remember, he got 37 months before in his Oklahoma case, and he was in prison for that. And he gets out, and then remarkably, three and a half weeks before the end of supervised release was the first act in this conspiracy. So there's a two-level increase for that, because it started before he was off supervised release. Mr. Davis is sincere in his religious belief. He did not con anybody by his religion, but that's where the sentencing ended up going. And I submit to you that's a serious First Amendment violation. Why is that? Why is it a First Amendment violation? I mean, how can he assert it's a First Amendment violation of his rights under the First Amendment for him to have preyed on the religious vulnerability or the religious beliefs of third parties? I just can't figure out how he can sort of assert those rights on behalf of others. Well, the court is blaming him for having used his religion. That's an inquiry into his religion. It's part of the con. I was going to say I view it a different way. I view it as him saying, no, you preyed on these people because of the common religion that you had, and you preyed upon their religious vulnerability. Am I wrong about that? I would say yes. It's sort of like Bernie Madoff because he came to mind again because of the Netflix show about him. He preyed on a lot of Jewish investors. He was Jewish, and they believed in him because of his religion. Religion was not the focus. It was a common element between them. But if you take the judge at his word when he says, I'm not sentencing you because of your professed faith or your religion, what I'm sentencing you for is for taking advantage of people who are vulnerable. Just think of the nature of grifting generally. Guys involved in grifts look for people, and they look for their points of vulnerability. And religion is one of those things that may be a point of vulnerability. Where you may be able to attract, you know, sometimes you can get in because you went to the same school as the person. Sometimes you belong to the same club. Sometimes you belong to the same church. And whatever that is, if you're involved in the grift, if you're involved in this act of trying to fraudulently induce people to give you money that you're going to divert to your own uses, you use what's available. And that's what the judge says he did. And why is that not true? Because it involved, I think, it involved his inquiring into the validity of his belief. Okay. Not that it was a ploy, but the validity of his belief. And there's a difference between those, obviously. Taking your example, it's a ploy. I view it as into the validity of his belief that it was all part of the scam, part of the con. But it still could be a truth, right? True in the con that you went to the same school. True that you belong to the same club. True that you belong to the same church. Right? And you may fervently believe in all the elements of the church, but it is something there that you can use to advance your own cause. Just like guys can with their judge, right? I mean, that's part of our whole code of conduct. We're saying judges shouldn't use their office to advance their own interests, right? Right. It doesn't undermine our belief system that much. I'm sorry. I'm making no point, and I'm into your rebuttal time, so I'm sorry. But it was interesting. Thank you. And I'll save the regards for rebuttal. Thank you. Ms. Wilmot. Good morning, Your Honors. May it please the Court. My name is Sammy Wilmot, and I'm a CJA panel attorney who was appointed to represent Mr. Phillip Ridings. I did not represent Mr. Ridings at trial. Mr. Ridings was pro se and had been appointed standby counsel. I was appointed to represent him at the sentencing phase and subsequently on this appeal. We've asked the Court to only consider one issue in this case, and that issue is whether the district court erred by allowing the government to introduce a failed plea agreement at trial. It is our contention that the failed plea agreement should have been excluded at trial under Rule 403. Under Rule 403, the district court is to conduct a balancing test. Rule 403 provides that if the court determines that the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence, the court may exclude that evidence. You would agree here, counsel, that it was pretty probative. This is highly probative evidence because it's just not a plea agreement he admitted to everything that the government was trying to prove. Yes, Your Honor, I would agree that it's highly probative. I believe that it's going to be highly probative in every case where a defendant has a failed plea agreement. So then it really comes down to whether there's unfair prejudice here. Yes, Your Honor. Okay, I'll proceed. The point I was going to make is that the failed plea agreement is probative. We don't dispute that. I don't think there's any dispute at all. The issue before this court is was it unfairly prejudicial, and I submit that it is. Unfair prejudice has been defined as an undue tendency to suggest decision on an improper basis. As we all know, jurors are human beings, and if a failed plea agreement is admitted at trial, that may very well cause a jury to stop their analysis. They may say, that's good enough for me, and not look at the case as a whole. Counsel, is there anything in the record that suggested that your client's decision whether to testify or not was influenced by the admission of the failed plea agreement and stipulation? In other words, I think your point is that the jury might just take this admission in the plea agreement and stop thinking about the case. So was there anything in the record to suggest that that influenced his decision on testifying? I do not believe so, Your Honor. Well, I was going to say what relevance is there that he agreed that the stipulations in particular could be used against him if he withdrew from the agreement? At least when I was a state court judge, we saw some plea agreements did not include that particular provision. I don't know how common they are in federal court, but that would seem to go to unfair prejudice. How unfair is it to him if he agreed to allow those stipulations to be used against him? Well, Your Honor, it's pretty standard practice in the Western District where I practice, at least from my experience. I mean, most certainly we have rules. We have Rule 11 and we have Rule 410 that says typically these plea agreements are not admissible, but a defendant can waive that right. I would submit that even though the defendant can waive that right, it is still going to be highly prejudicial to the case, regardless of whether there's a waiver or not. Right, but our issue here is, is it unfair? And the issue is, how is it unfair to admit against the person who made the admissions the statement? When he said, when he signed something, it said, if this deal falls through, you can do that. Why is that unfair? Well, Your Honor, he is not required to testify, and if he didn't testify, then all the jury is going to see is this admission. He wasn't required to sign the plea agreement either. That is correct, Your Honor. And so he signed it, and there's no challenge to it as being not knowing or voluntary or intelligently signed. So at that point, I mean, doesn't a reasonably intelligent adult human being who signs a statement that says, yeah, you can put these facts in against me if I change my mind and go to trial, I'm just having a hard time seeing the unfairness in it. I can certainly understand your point, Your Honor, and I think that comes down to the defendant's mindset before he signs a plea agreement. As an attorney, we go over these plea agreements with our clients. We talk to them about the possible issues and problems that may come up, but I'm just not sure that that always resonates. And especially in a situation like this, there were two plea agreements that were passed back and forth in a relatively short period of time. There were a lot of documents in this case. I think the government introduced almost 300 exhibits. There were multiple witnesses. Mr. Ridings, in his pro se motion to suppress, he argued that he didn't have all the facts at the time. So I didn't make the argument that that was involuntary or unknowing because the district court ruled on that. But nonetheless, I do think that that could be perceived as unfair based on a defendant's perception. Thank you. Okay. Thank you, Your Honors. Thank you. Mr. Elser, when you're ready. Good morning, Your Honors. Kenny Elser on behalf of the United States. Just to address a couple of questions that came up in the other. One is, I don't think there's anything in the record that Ridings testified because of the plea agreement being entered into. If you read his testimony, he was very convinced that he had invented a wind turbine. He wanted to convince the jury that he believed in this. I guess it's an assumption based on his testimony, but I would argue that that was not a factor. And I don't know that it would matter even if it was because, and again, on the fairness issue of the plea, use of the plea agreement admission, he was represented. The court, the judge, the district court took a break so that the defense attorney could explain to him the consequences of not going through the plea specifically on the waiver that he had given in the plea agreement to using the factual basis as part of the plea agreement. So he took very much care that Mr. Ridings knew the consequences of withdrawing from the plea agreement, which Mr. Ridings was explained, admitted he understood and went forward anyway. The other- Counsel, on that issue, is it a standard provision in your office's plea agreements? Is that a negotiable provision? Well, it's standard, but obviously all the provisions are negotiable if they did not- I mean, I would assume that had they quibbled over that, then we would not have had a plea agreement or we might have taken it out. I would say, Your Honor, it is standard and it rarely is disputed because most people go forward once they've signed the plea agreement. But again, I would- the other thing, a couple of other points on the unfair prejudicial issue. One is that the stipulation only dealt with one particular, I think, one of the charges, one of the wire fraud charges and a money laundering charge dealing with Howard Mangum. That was not a conspiracy, wasn't a plea to a conspiracy. And so, I mean, that's one thing. The other thing is the evidence at trial, everything, almost everything in the stipulation was presented through witnesses. Howard Mangum, who is the H.M. in the stipulation, testified. Cody Fell, who was a co-conspirator who had pled in another case, also testified regarding duping Mr. Mangum into believing that his money would go to, would go towards Bell Can Engineering when it actually was almost immediately divided up and spent for personal expenses among the three co-conspirators. So, and, I mean, the case law in this circuit is that these waivers are enforceable. We did, you know, we cited the case law where that has been done. I also cited a Fifth Circuit case where that's done in the Fifth Circuit where you waive your rights under Rule 410. So I don't think anything, it was anything unfairly prejudicial. In addition, since that argument wasn't made to the district court, this is the first time anybody is considering that, and so it's certainly not error, much less plain error. Let me ask you this. Could there be a situation, and this gets back to Judge Erikson's earlier point, where it is so unfair, the nature of the admissions themselves, that it becomes a matter of Rule 403? I'll give you an example. Suppose you had agreed on an ACCA, you know, enhancement, and there are details about the prior crimes in the plea agreement. And the government walks in and says, not only am I going to do the admissions on this crime, but I'm going to give the details of all the prior crimes that this guy committed as well. Would you agree that that could pose an unfair prejudice problem? I would, and I would say keep in mind this was redacted, so this didn't even include Mr. Davis. I mean, the original admissions were redacted to protect Mr. Davis, and in such an instance that the court that you're asking about, Judge, you could redact out that, you could put in another felony offense. So I think it could be handled. Why this is not that case is these were purely factual issues that Mr. Ridings admitted, and I would say were then proven at trial through the witnesses that were referenced in the stipulation. And with regard to Mr. Davis again, I mean, and this is changing. I want to address that argument. He was completely redacted, and if you read it, if you read that exhibit, you could assume that Mr. Ridings was not implicating Mr. Davis at all because it was Mr. Fell that he was. If you read it carefully and you compare it to the original plea agreement, which is at document 57-1, you can see we went to great lengths, the government went to great lengths, as did the court, to eliminate any reference to Mr. Davis. And you could read that and believe that Cody Fell and Mr. Ridings had perpetrated this crime without Mr. Davis' involvement. It in no way implicated him. In addition, as I point out, the court instructed the jury, don't even consider it as to Mr. Davis. And both Mr. Ridings and Mr. Davis testified and offered whatever explanation they could about the facts that were in both stipulations. They were allowed to make their case to the jury about why the stipulation was signed on Mr. Ridings' part and why it wasn't true, why the facts weren't true, and why they shouldn't accept it. In such a case, I think you cannot say that the district court really abused its discretion as to either defendant in allowing this. Now, addressing the First Amendment argument, we have contended, and it's in the brief, that this was a forfeited argument and it's under plain error review. And that's based on a footnote in this United States v. Eisler that says, while challenge to substantive reasonableness do not have to be raised at the district court level. Our contention, and this is a procedural error that they're claiming, that the court impermissibly considered Mr. Davis' religion in assessing additional penalty. That's a procedural error. It's not a substantive reasonable like the court. The defense is arguing that, overall, the sentence is unreasonable. This is a specific he considered an improper factor. So, it was forfeited. It's plain error review, we would argue. Now, with regard to the specifics, I, not surprisingly, agree with some of the questions from the court. This is really a reflection of the fact that people's faith, the victim's faith, particularly Uchenna Obey's faith, was abused, was misused. Was Davis, whether sincerely or not, the fact that Davis was a Christian brother, he specifically testified that caused him to trust him and to not question these things. It is at, the transcript at 589 is where he testified that Davis, he considered Mr. Davis a Christian brother and he trusted him for that reason. And if you recall from the brief, Uchenna Obey, he's the first victim in this case. It was back in the spring of 14, and the reason he became acquainted with Mr. Davis was because they were on a prayer line together. And that's at transcript 524 through 527. So this was, this has to do with Mr. Obey, not with Mr. Davis' faith. Mr. Davis knew that Uchenna Obey trusted him because he believed him to be a Christian brother. And he used that to basically keep Mr. Obey bamboozled from September, I'm sorry, from spring of 14 through 18. And it was very much apparent that that was because Mr. Davis professed that he was a Christian brother and believed the same things Mr. Obey and would not take advantage of a fellow Christian brother. That was also... Counsel, in the guidelines, we've got, there's a couple of places I think you could incorporate that, right? Maybe abuse of a position of trust or vulnerable victim, but you didn't seek any enhancement based on that type of relationship, did you? No, but Your Honor, keep in mind, although the focus is on the religious, that statement from the court, the court listed numerous aggravating factors in this case that by themselves would have justified the upward variance. That included the fact that Mr. Davis was on supervised release for a wire fraud money laundering case at the time he began this. Now, I know that's taken into account in the criminal history, but it's certainly a 3553 factor. This was... It extended over a long period of time. Millions of dollars, many victims. Particularly aggravating was after being indicted, they continued to try to sell Dragonfly to other people, to engage somebody to build a model of it, and to continue to sell it after being indicted. So there were many factors that the court cited that justified the going above the guideline range. But I do not believe it was improper for the court to consider the religious... the fact that the religious faith of the victims was preyed upon. That is what the court considered an aggravating factor. And that's an aggravating factor without regard to whether Mr. Davis was sincere. Maybe if he was a sincere Christian, it made it even more aggravating. But the court did even take into account whether Davis was just playing a part or whether he was sincere. He was focusing on the fact that it was the people who, because of their religious belief and their belief that Davis shared that belief, that they were particularly vulnerable. They accepted what he said, whereas if he wasn't a Christian brother, they may have been more discerning about what was told to them about where their money was going, about the... So, and I... You know, this case I cited, this Gunderson case, which is an Eighth Circuit case, dealt with bankruptcy fraud in which a person there, the defendant had operated a faith-based counseling, and the court there, the district court, said, you know, you're portraying yourself as some moral person that's going to be faith-based counseling, and on the other side, you're lying on your bankruptcy form. And this court found that that was not an improper faith-based or First Amendment violation. And in this Grigg case, which is a Sixth Circuit case that I cited, is almost the exact same facts here. The defendant was a Ponzi scheme. The defendant in that case would pray with his victims, would quote the scriptures, would do things like that. And in that case, the district court said, yeah, that is an aggravating factor. You took advantage of people's religious faith, and they put faith in you because they believed you were a Christian because of the way you acted. And so I would say that that case, which relied on Gunderson in reaching that result, is the way that the court should analyze this. It is not Mr. Davis who is being punished for his faith. It's Mr. Davis being punished for using other people's faith to basically keep them from discovering and going along with this fraudulent scheme. So unless the court has any questions, that's all I have. Thank you, Your Honor. Thank you, Mr. Elser. Mr. Hall, your rebuttal. Back on Issue 1, on the unfairness of using the plea agreement under 403, Judge Brooks went to great extremes to make sure that that was completely sanitized. They went through at least three drafts, and it was remarkable that they got to that point. It was far different than the government's first offer, but you cannot say that Judge Brooks did not do his best. And I agree with Mr. Elser that you can't, you could say that the way it reads, it was just Cody Fell and Mr. Ridings together, and that's it. And Mr. Davis wasn't part of it. But still, in its conspiracy case, it falls upon the other. And I haven't tried as many cases as Mr. Elser, but in 49 and a half years, this is the first time I'd encountered that. And it's in the plea agreements in the Eastern District and the Western District, all of them. And when I raised this issue, let me tell you what happened in the Western District. I said, well, that couldn't happen here. I said, yes, it could. Look at the plea agreements. And they said, oh, yeah, it's in there, too. I just never noticed it before. But in all my years, it's the first time I encountered it, so that was my first exposure. And I address that to your question, Judge Strauss. Thank you. Thank you. The matter is under advisement, and we will render a decision in due course. I want to thank you, Mr. Hall and Ms. Wilmoth, for accepting the CJA appointments. It's very important to our system of justice. Without your willingness to serve, it would be very difficult for the courts to basically do justice in these cases. So thank you very much. We appreciate your service. And with that, the case is submitted.